RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0380P (6th Cir.)
File Name: 01a0380p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

APPOLO FUELS, INC.,
  *Plaintiff-Appellant,*

  *v.*

BRUCE BABBITT, Secretary of
the United States Department
of Interior; OFFICE OF
SURFACE MINING
RECLAMATION AND
ENFORCEMENT, U.S.
Department of the Interior,
  *Defendants-Appellees.*

No. 00-5376

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 98-00311—J. B. Johnson, Magistrate Judge.

Argued: August 3, 2001

Decided and Filed: October 24, 2001

Before: DAUGHTREY and GILMAN, Circuit Judges;
WEBER, District Judge.[*]

---

[*]The Honorable Herman J. Weber, United States District Judge for
the Southern District of Ohio, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:**  James R. Golden, DENHAM, GOLDEN & NAGLE, Middlesboro, Kentucky, for Appellant.  Andrew C. Mergen, UNITED STATES DEPARTMENT OF JUSTICE, LAND & NATURAL RESOURCES DIVISION, Washington, D.C., for Appellees.  **ON BRIEF:** James R. Golden, DENHAM, GOLDEN & NAGLE, Middlesboro, Kentucky, for Appellant.  Andrew C. Mergen, UNITED STATES DEPARTMENT OF JUSTICE, LAND & NATURAL RESOURCES DIVISION, Washington, D.C., for Appellees.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge.  The plaintiff, Appolo Fuels, Inc., appeals the district court's judgment upholding the decision of the Interior Board of Land Appeals that Appolo violated federal regulations requiring the elimination of "highwalls" (described in the record as "cliff-like" rock walls) at its surface coal-mining site in Kentucky.  Appolo maintains that it had initially backfilled the site properly and that the subsequent re-exposure of highwalls does not violate the Surface Mining Control and Reclamation Act.  Although the Board and the federal courts have consistently held that such re-exposure does violate the Act, Appolo claims that these cases misinterpret the Act, fail to consider modern engineering data, and should be overturned.  Second, Appolo claims that the federal action was barred by *res judicata* because the Commonwealth of Kentucky had already decided not to hold Appolo responsible for any alleged violation.  Recognizing that the Interior Board of Land Appeals has consistently ruled that the principles of *res judicata* and collateral estoppel do not apply to the Office of Surface Mining, Appolo again urges this court to overturn a line of precedent.  Finally, Appolo maintains that the Office

jurisdiction from acting on the possible violation, where that order is based on the violation not existing . . . .

30 C.F.R. § 842.11(b)(1)(i)(B) (2000).

Appolo maintains that Kentucky had good cause for failing to correct the violation given that the state hearing officer assessed no penalty or remedial action against Appolo for the settled highwall because "[f]rom a fairness perspective, it would seem logical that the regulation would address commonly occurring settling if it was intended that [approximate original contour] be established and 'maintained' until a final release is obtained."  As an initial matter, the Board noted that, in ruling as a matter of "fairness," the state officer failed to find that there was no violation, as required by (iv), and failed to enforce the state rule requiring highwall elimination.  *See Appolo*, 144 IBLA, at 145.  Moreover, the Board and the district court correctly found that Appolo lacks standing to challenge the Office of Surface Mining's ten-day notice to the state, which is an "exchange between the Federal and State regulatory authorities."  *Id.* at 146; JA, 34.

**CONCLUSION**

For the reasons set out above, we AFFIRM the judgment of the district court sustaining the decision of the Interior Board of Land Appeals in this case.

Finally, Appolo claims that the Office of Surface Mining lacked jurisdiction because it does not have unlimited jurisdiction to pursue violations in primacy states, such as Kentucky.[1]  The district court correctly found, however, that although Kentucky had the primary responsibility to enforce mining regulations, the Office of Surface Mining maintains oversight jurisdiction to enforce those regulations if the state fails to do so.  An authorized representative of the Secretary is required to conduct a federal inspection whenever there is reason to believe that a violation of the Surface Mining Control and Reclamation Act has occurred and:

(B)(1) The authorized representative has notified the state regulatory authority of the possible violation and more than ten days have passed since notification and the State regulatory authority has failed to take appropriate action to cause the violation to be corrected or to show good cause for such failure and to inform the authorized representative of its response.  After receiving a response from the State regulatory authority, before inspection, the authorized representative shall determine in writing whether the standards for appropriate action or good cause for such failure have been met . . . .

(2) For purposes of this subchapter, an action or response by a State regulatory authority that is not arbitrary, capricious, or an abuse of discretion under the state program shall be considered "appropriate action" to cause a violation to be corrected or "good cause" for failure to do so.

. . . . .

(4) Good cause includes: . . .(iv) the State regulatory authority is precluded by an administrative or judicial order from an administrative body or court of competent

---

[1]"Primacy states" are states that operate their own, federally-approved, surface mining programs.  *See Molinary v. Powell Mt. Coal Co., Inc.*, 125 F.3d 231, 234 (4th Cir. 1997).

of Surface Mining lacked jurisdiction to order the reclamation action.  However, as the district court found, the federal statute and regulations, case law, and legislative history indicate that although Kentucky has primary responsibility to enforce mining regulations, the federal agency maintains oversight jurisdiction to enforce those regulations if the state fails to do so.  For the reasons set out below, we find no error in the district court's decision sustaining the ruling of the Board, and we therefore affirm.

### *PROCEDURAL AND FACTUAL BACKGROUND*

In September 1984, Appolo Fuels, Inc., received Kentucky surface mining permit #407-0066 for a large contour surface mining operation of multiple seams of coal.  Under this permit, Appolo was required to meet applicable performance standards of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 - 1328 (1986).  *See* 30 U.S.C. § 1265(a) (1986).  Among other things, the Act provides that after surface mining, the operator must "backfill, compact (where advisable to insure stability or to prevent leaching of toxic materials), and grade in order to restore the approximate original contour of the land with all highwalls, spoil piles, and depressions eliminated. . . ." 30 U.S.C. § 1265(b)(3); *see also* KY. REV. STAT. ANN. § 350.410 (Michie 1997).  A highwall is a "face of exposed overburden [material that overlies a coal deposit] and coal in an open cut of a surface mining activity or for entry to underground mining activities."  30 C.F.R. § 701.5 (2000).  As the Department of Interior's brief describes it,

[a] surface coal mining operator in a steep, mountainous area removes the part of the mountain lying above the coal seam (known as overburden) before he mines it. The process of removing the overburden to expose the coal creates a highwall, which is a clifflike area [similar to the rock walls seen along interstate highways] extending from the coal seam up.  To eliminate the highwall after removing the coal, the operator backfills against the highwall until it is completely eliminated,

returning the mined area to its approximate original contour.

Appolo's mining site under permit #407-0066 was stair-stepped, with two major highwalls of approximately 125 feet each, for a total vertical height of 250 feet. Appolo conducted its mining and reclamation from August 1985 through September 1988. The permit was divided into eight separately bonded increments, which were completed at different times throughout the mining period; increment 1 was completely backfilled, graded, and seeded by November 1986, increments 2 through 5 by November 1987, increment 6 by June 1988, and increments 7 and 8 by September 1988. On March 1, 1989, the Kentucky Department for Surface and Mine Reclamation and Enforcement issued a Phase I (partial) bond release on all eight increments, indicating that "reclamation is complete except for revegetation."

Eugene Boston, chief engineer for Appolo, testified that by the time of Phase I bond release, all highwalls at the permit site had been eliminated. On March 7, 1990, however, inspector Bruce Cowan of the Kentucky Department for Surface and Mine Reclamation and Enforcement issued a non-compliance notice to Appolo. Among other violations, backfilled areas of increments 4 through 8 had settled, exposing highwall up to eight feet high. The notice contained an order to Appolo to eliminate all highwall. Appolo contested the highwall violation, and on August 6, 1991, a Kentucky administrative law judge noted Appolo's original compliance and recommended that no penalty be imposed, nor any remedial action ordered to eliminate the highwall, based on the following reasoning:

The parties do not dispute the constructions to be given the cited regulations except as applied to highwall created by settling. In reviewing 405 KAR 16:190 [backfilling and grading], it is clear that AOC [approximate original contour] must be established during reclamation. However, the regulation does not refer to "maintaining" AOC after it is established.

[*Inc. v. OSM*, 121 IBLA 142, 149 (1991)], and *Harlan Cumberland Coal Co.* [*v. OSM*, 123 IBLA 129, 134 (1992)], . . . would also be called into question . . . ." *Appolo*, 144 IBLA at 146-47; *see also* JA, 33 ("Appolo seeks to overturn, not only its own adverse decision, but also the reasoning of a long line of IBLA opinions, as well as other federal court decisions, on a number of issues."). In sum, Appolo's contention that this court should ignore or overturn precedent falls short of persuading us that the district court's and the Board's opinions were arbitrary, capricious, or otherwise inconsistent with law.

Moreover, we decline Appolo's invitation, issued at oral argument of this case, to decide the precise duration of the obligation to ensure elimination of highwalls under the act. It is sufficient to note that it is neither arbitrary nor capricious for the Office of Surface Mining to require compliance at least until the performance bonds are fully released.

Appolo next contends that it was subjected to an arbitrary and capricious enforcement action because both federal and state agencies have adopted several different enforcement policies such that Appolo's site would have been evaluated differently depending on the policy in effect when it was evaluated. Our review of the record indicates, however, that of the four policies discussed by Appolo, one was canceled, two were rescinded, and none applied or could have been applied to Appolo's site.

Appolo also maintains that the federal notice of violation should be barred by *res judicata* because Kentucky had already ruled on the alleged violation. The district court correctly recognized, and Appolo itself concedes, that the Interior Board of Land Appeals has consistently ruled that the principles of *res judicata* and collateral estoppel do not apply to the Office of Surface Mining. Again urging this court to overturn a line of precedent, Appolo does not establish that the opinions of the district court and the Board were arbitrary, capricious, or otherwise inconsistent with law.

and reclaim highwalls caused by its strip-mining operation. Appolo now appeals that decision.

## DISCUSSION

The Surface Mining Control and Reclamation Act provides that "[a]ny action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law." 30 U.S.C. § 1276(a). "[T]he findings of the Secretary if supported by substantial evidence on the record considered as a whole, shall be conclusive." 30 U.S.C. § 1276(b).

Appolo's first contention on appeal is that, although it was required to "backfill, compact (where advisable to insure stability or to prevent leaching of toxic materials), and grade in order to restore the approximate original contour of the land with all highwalls, spoil piles, and depressions eliminated," it was not required to compact the backfill to insure that the highwalls would not be re-exposed due to settling. 30 U.S.C. § 1265(b)(3). Appolo maintains that the statute requires compaction to insure stability but that neither this nor any other statute or regulation requires compaction to prevent highwall re-exposure. And, although Appolo recognizes that this argument was rejected in *River Processing*, it nevertheless contends *River Processing* misinterprets the statute and is out-dated in light of new engineering data.

The district court correctly found, however, that Appolo's interpretation of the Surface Mining Control and Reclamation Act is contrary to the statutory provisions requiring the establishment of the approximate original contour and the elimination of highwalls, contrary to clear legislative intent, and unsupported by any precedent. In fact, as the Interior Board of Land Appeals noted, "[i]n order to grant the relief sought by Appolo in this appeal, we should need to overrule more cases than *River Processing*: The opinions in *W.E. Carter [v. OSM*, 116 IBLA 262, 267 (1990)], *Freemont Coal Co. [v. OSM*, 130 IBLA 41, 43 (1994)], *R.C.T. Engineering*

Furthermore, no regulation addresses compaction of backfilled material to prevent settling after AOC is initially established. From a fairness perspective, it would seem logical that the regulation would address commonly occurring settling if it was intended that AOC be established and "maintained" until a final release is obtained.

On September 11, 1991, the Kentucky Natural Resources and Environmental Protection Cabinet followed this recommendation, declining to assess a penalty or to order remedial action against Appolo for the exposed highwall.

In the meantime, during an oversight inspection on August 21, 1990, Earl Dudley Shumante, Jr., a reclamation specialist for the federal Office of Surface Mining, noted the exposed highwall. Shumante did not issue a violation against Appolo at the time, however, because the state was still proceeding with the alleged violation. But after a subsequent bond release inspection on August 4, 1994, Shumante issued Kentucky a ten-day notice that the highwalls at Appolo's site had not been eliminated. On August 10, 1994, the state responded that although this violation had been noted by state inspector Cowen in 1990, Appolo had successfully contested the violation on the grounds that "the wall was eliminated as required which was documented by the Phase I bond release and that the regulation does not require you to maintain AOC nor do they [sic] address settlement." The federal agency responded that the state's failure to enforce the statutory or regulatory requirements was arbitrary, capricious, or an abuse of discretion, and that the state had not shown good cause for failing to take appropriate action. Kentucky chose not to contest this finding.

After a ground-level inspection, Shumante found exposed highwall ranging from 4 to 15 feet in height. On September 1, 1994, he issued a notice of violation to Appolo for failure to achieve approximate original contour and eliminate highwalls, as required by 405 KAR § 16:190 and 30 C.F.R. § 816.102. Subsequently, an administrative law judge

found that Appolo was in violation of its permit due to the continued existence of the highwalls and upheld the notice of violation. Appolo appealed this decision to the Interior Board of Land Appeals, arguing that it had complied with the regulations by reclaiming the site free of highwalls in time for the Phase I partial bond release and that nothing in the regulations required compaction such that the highwalls would remain eliminated indefinitely. The Board rejected Appolo's contention, holding that:

Nothing in the State or Federal regulations supports this argument; both authorities require complete elimination of highwalls. *See* 30 C.F.R. § 816.102; 405 K.A.R. § 16:190. These rules govern backfilling and grading and require complete elimination of all highwalls by those means. In so doing, they implement [Surface Mining Control and Reclamation Act] section 515(b)(3), 30 U.S.C. § 1265(b)(3) (1994), which requires elimination of "all highwalls." The highwalls at issue were discovered after reclamation of the site during inspections conducted before the sites were finally released from performance bonds insuring completion of required reclamation. Contrary to the suggestion made by Appolo, no loophole exists in the law that will allow an operator to escape compliance with the requirement imposed by State and Federal regulations that highwalls be permanently eliminated.

*Appolo Fuels, Inc. vs. OSM*, 144 IBLA 142, 144 (1998). The Board found the present case indistinguishable from *River Processing, Inc. v. OSM*, 76 IBLA 129 (1983), which addressed the issue of highwall exposure due to settling as follows:

While the settling of backfill material is not mentioned in 30 CFR 715.14, there is certainly a mandate for an operator to take it into account implied in the language of that section: 'In order to achieve the approximate original contour, the permittee shall * * * transport, backfill, compact (where advisable to ensure stability or

to prevent leaching of toxic materials), and grade all spoil material to eliminate all highwalls.' . . . Subparagraph (j)(2) of 30 CFR 715.14 specifies more particularly that '[b]ackfilled materials shall be selectively placed and compacted wherever necessary * * * to ensure the stability of the backfilled materials.' It is evident from the record that River Processing failed to place and compact backfilled materials adequately to ensure that the highwall behind Hollow Fill No. 2 would remain completely covered. Thus, while we do not reject the company's assertion that it covered the highwall during its reclamation operations, we do reject its argument that by temporarily covering the highwall it has completely satisfied its obligation 'to eliminate all highwalls.' This Board recognizes that at some time an operator must be relieved of the *responsibility for ensuring that a highwall created during its mining operation remains covered.* However, *this responsibility must continue at least for a sufficient period of time to allow the regulatory authority to determine that the highwall has in fact been covered and that the backfill material has been placed and compacted in a manner that properly takes into account the expected settling.* In our opinion, under the facts of this case, River Processing remained responsible for those highwalls created during its mining and exposed at the time of OSM's November 1980 enforcement action.

*Id.* at 140-42 (emphasis added; footnotes omitted). Recognizing that some settling of backfilled materials is inevitable, the opinion noted that "[t]he requirement that the permittee eliminate all highwalls completely, as we have construed it, should be able to be satisfied, however, if a permittee places and grades sufficient backfilled material above the level of a highwall to account for reasonably expectable settling." *Id.* at 141 n.4.

Following the final decision of the Interior Board of Land Appeals, Appolo sought judicial review pursuant to 30 U.S.C. § 1276. On February 24, 2000, the district court upheld the Board's decision requiring that Appolo completely eliminate